IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DOC NO
REC'D/FILED

2021 OCT 27 PM 2: 59

PETER OPPENEER
CLERK US COUR
WD OF WI

| | |
|---|---|
| UNITED STATES OF AMERICA | INDICTMENT |
| v. | Case No. 21 CR 112 JDP |
| MICHAEL SHILLIN, | 18 U.S.C. § 1343 |
| | 18 U.S.C. § 1344 |
| | 18 U.S.C. § 981(a)(1)(C) |
| Defendant. | 18 U.S.C. § 982 |
| | 18 U.S.C. § 2461(c) |

THE GRAND JURY CHARGES:

<u>COUNTS 1-9</u>

1.      At times material to this indictment:

        a.      In 2011, defendant MICHAEL SHILLIN began working as a financial advisor for Company-1.  In 2014, SHILLIN began working as a financial advisor for Company-2.  On or about May 21, 2018, SHILLIN was discharged from Company-2 for "failure to follow firm directive regarding the payment of client CPA [Certified Public Accountant] fees."

        b.      On or about May 22, 2018, SHILLIN started a financial advisory company named Shillin Wealth Management (SWM).  Many clients of SHILLIN followed him from Company-1 and Company-2 to SWM.  At first, SWM used the brokerage, clearing, and trading services of Company-3.  In or about October of 2020, Company-3 and Shillin separated, and Shillin reaffiliated his business with Company-4 and obtained brokerage services from Company-5.  According to a report run by Company-3, as of December 4, 2020, SWM managed 2,992 accounts and $135,470,489.80.

   c.  SWM charged its clients a yearly fee equal to a percentage of their money managed by SWM.

  2.  From in or about March 2014 to on or about January 22, 2021, in the Western District of Wisconsin and elsewhere, the defendant,

MICHAEL SHILLIN,

knowingly and with intent to defraud, devised and intended to devise a scheme to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, promises, and by concealment of material facts.

  3.  It was part of the scheme that SHILLIN made various misrepresentations, further described below, to give his clients the impression that they were better off than they actually were.  He kept his clients artificially happy so that they would refer other clients, keep money invested for longer, and invest more money.  Since SWM charged its clients a yearly fee equal to a percentage of their money managed by SWM, Shillin made extra fees from the scheme.

  4.  It was part of the scheme to defraud that SHILLIN told his clients that he purchased non-public stock of well-known companies on their behalf.  He then informed the clients that they had made hundreds of thousands of dollars on these investments.  However, as SHILLIN knew, SHILLIN had not purchased the stocks on his clients' behalf.

  5.  It was further part of the scheme to defraud that SHILLIN convinced numerous clients to purchase insurance policies by misrepresenting the cost of the policies as well as the benefits.  SHILLIN obtained commission payments from the

2

insurance companies on at least some of the insurance policies he fraudulently convinced his clients to buy.

6.      It was further part of the scheme to defraud that SHILLIN provided clients with fraudulent tax documents to make them appear eligible for tax breaks to which they were not entitled.

<u>Wires</u>

7.      On or about the dates listed below, in the Western District of Wisconsin and elsewhere, the defendant,

MICHAEL SHILLIN

for the purpose of executing this scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce, signals and sounds described below for each count:

| COUNT | DATE | NATURE OF WIRE COMMUNICATION |
|-------|------|------------------------------|
| 1 | 1/6/2020 | Email from Michael Shillin (ms******@shillin***************.com) to sl*****@yahoo.com related to insurance policy. |
| 2 | 1/7/2020 | Email from Michael Shillin (ms******@shillin***************.com) to bi*****@frontier.com at 10:55 a.m. explaining insurance payment. |
| 3 | 1/9/2020 | Email from Michael Shillin (ms******@shillin***************.com) to jlc*****@frontier.com explaining insurance notices. |
| 4 | 2/7/2020 | Email from Michael Shillin (ms******@shillin***************.com) to ne*****@gmail.com providing update on alleged non-public stock investment. |
| 5 | 2/17/2020 | Email from Michael Shillin (ms******@shillin***************.com) to aa***@ta*****.com and j-******@outlook.com related to a fraudulent tax document. |

3

| 6 | 2/17/2020 | Email from Michael Shillin (ms******@shillin****************.com) to aa***@ta******.com and he*****@charter.net related to a fraudulent tax document. |
| 7 | 7/21/2020 | Email from Michael Shillin (ms******@shillin****************.com) to nk*****@gmail.com providing an update on alleged non-public stock investment. |
| 8 | 7/23/2020 | Email from Michael Shillin (ms******@shillin****************.com) to gd*****@charter.net providing price information for alleged non-public stock investment. |
| 9 | 8/31/2020 | Email from Michael Shillin (ms******@shillin****************.com) to da*************@gmail.com providing financial advice related to alleged non-public stock investment |

(All in violation of Title 18, United States Code, Section 1343).

<u>COUNT 10</u>

1.      Paragraph 1 of Counts 1-9 is incorporated here.

2.      At times material to the indictment, Northwestern Bank was insured by the Federal Deposit Insurance Corporation.

3.      From in or about August 2020 to on or about January 22, 2021, in the Western District of Wisconsin and elsewhere, the defendant,

MICHAEL SHILLIN,

with the intent to defraud, knowingly executed a scheme to obtain money under the custody or control of a financial institution, specifically, Northwestern Bank, by means of materially false or fraudulent pretenses and representations.

4.      It was part of the scheme to defraud that SHILLIN obtained two loans on behalf of SWM by using fraudulent collateral.  Specifically, SHILLIN sent an account statement to Northwestern Bank that showed SWM owned an account ending in 1409

4

with a balance of over $1,200,000.  As SHILLIN knew, this document was fraudulent and SHILLIN's clients owned and controlled the account.  SHILLIN fraudulently used the account as collateral for both loans, which totaled $462,000.

5.      On or about August 24, 2020, in the Western District of Wisconsin, the defendant,

MICHAEL SHILLIN,

knowingly executed the above-described scheme by emailing executives from Northwestern Bank a copy of a fraudulent account statement for the account used as collateral for the two loans.

(All in violation of Title 18, United States Code, Section 1344(2)).

FORFEITURE ALLEGATION

1.      The allegations contained in COUNTS 1-10 are re-alleged and incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982 and Title 28, United States Code, Section 2461(c).

2.      Upon conviction of the offenses alleged in any count of this indictment, the defendant, MICHAEL SHILLIN, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982, and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the schemes to defraud described above.  The property to be forfeited includes, but is not limited to, the following:

a.      Money Judgment – a sum of money equal to the proceeds obtained as a result of the schemes to defraud;

3.      If any of the property described above, as a result of any act or

5

omission of the defendant:

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the court;

   d.  has been substantially diminished in value; or

   e.  has been commingled with other property which cannot be divided

     without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18,

United States Code, Section 982(b)(1) and Title 28, United States Code, Section

2461(c).

         A TRUE BILL

         PRESIDING JUROR

         Indictment returned: 10-27-21

TIMOTHY M. O'SHEA
Acting United States Attorney

6